# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 15-01644-TLM |
| KRISTIN SUZANNE DUDLEY, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM DECISION
_____

**BACKGROUND AND FACTS**

Debtor Kristin Dudley ("Dudley") and James Jewett ("Jewett") were divorced on August 1, 2014. Thereafter, Dudley engaged attorney Jeffrey A. Strother ("Strother") to seek a modification of the judgment and decree of divorce.[1] Ultimately, an amended judgment ("Amended Judgment") was entered in the divorce case. The Amended Judgment contained the following provision:

> 5. Petitioner [Jewett] shall cause JLJ, Inc., [a company owned by Jewett] to loan respondent [Dudley] $27,726.00 to assist her in paying outstanding loans incurred to pay expert witness fees and attorney fees, the expert witness and attorney fees that have yet to be paid, and the $2,726.00 required of her by paragraph 2 of this document. This loan shall be made by check payable to Jeffrey A. Strother and Kristin Dudley, which shall be tendered through counsel. This check shall be in the hands of Jeffrey A. Strother no later than the close of business on December 31, 2015. Upon Strother's actual receipt of the check, respondent shall place JLJ, Inc., on the title to her 2013 Volkswagen Jetta as a lienholder to provide security for this loan. The debt shall be evidenced by a note incorporating the terms stated in this judgment.

("Paragraph 5").

_____
[1] Dudley originally engaged Strother to pursue a malpractice claim against her original divorce attorney, but the focus of his efforts changed.

MEMORANDUM OF DECISION - 1

On December 18, 2015, a few weeks after the Amended Judgment was entered, Dudley filed a chapter 7 bankruptcy petition.[2] Beginning in March of 2016, Jewett and Dudley filed several motions in state court to, among other things, delete Paragraph 5 from the Amended Judgment. Strother thereafter sought stay relief in this Court in order to appear in state court and "prosecute his claims as a third party beneficiary" to the Amended Judgment. *See* Doc. No. 25. Shortly after a preliminary hearing was held on Strother's stay relief motion, Dudley received a discharge. *See* Doc. No. 31. Later, upon stipulation of the parties, the Court granted Strother's stay relief motion. *See* Doc. No. 38. The language of the parties' stipulated order granted Strother relief to "pursue any claim he may have as third party beneficiary arising out of that Amended Judgment entered December 1, 2015 . . . and in particular, the obligations of Mr. Jewett identified in paragraph 5 on pages 2–3 of that Amended Judgment." *Id*. Strother then sought to enforce his perceived rights under Paragraph 5 of the Amended Judgment in the divorce case by filing motions to intervene. Strother ultimately filed three motions to intervene, but the state court denied all three motions.

Dudley's bankruptcy case was closed on November 9, 2016, but she reopened her case in order to file a motion for sanctions against Strother for his attempts to intervene in the divorce case, arguing that his conduct violated her

---

[2] Unless otherwise indicated, all statutory references and citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure 1001–9037.

MEMORANDUM OF DECISION - 2

discharge injunction. Doc. No. 53 ("Motion"). Strother objected to the Motion. Doc. No. 56. At a hearing on February 21, 2017, the parties presented evidence and argument and the matter was taken under advisement. Doc. No. 60.

**DISCUSSION AND DISPOSITION**

Dudley argues Strother violated the discharge injunction by seeking to enforce Paragraph 5 of the Amended Judgment, and she seeks damages in the nature of contempt. Strother claims he did not violate the discharge injunction because he was only attempting to enforce the provision against *Jewitt*, not Dudley. While acknowledging that her discharge injunction does not protect third parties like Jewett from liability on debts, *see* § 524(e), Dudley argues Strother's state court actions were an indirect attempt to collect from her because the provision upon which Strother relied would require Dudley to obtain a loan from Jewett's company, secure that obligation, use the loan funds to pay Strother, and be obligated to repay Jewett on the loan.[3]

    A.    **Res Judicata**

A threshold issue, raised by Strother in a conclusory manner, is whether Dudley's claim of discharge violation is barred by a state court ruling and the doctrine of res judicata. *See* Doc. No. 56 at 9–11. Generally, res judicata (now more properly characterized as claim preclusion) "prohibits lawsuits on 'any

---

[3] Dudley also suggested at hearing that her obligations to Jewett under Paragraph 5 constituted an executory contract under § 365, and that the contract was rejected by the chapter 7 trustee's failure to assume it. The Court concludes that it does not need to reach that argument.

MEMORANDUM OF DECISION - 3

claims that were raised or could have been raised' in a prior action." *In re Nicholas*, 556 B.R. 465, 473–74 (Bankr. D. Idaho 2016) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not the relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

The preclusive effect of a state court judgment is determined by the preclusion rules of the state in which the judgment was issued.  28 U.S.C. § 1738; *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). Idaho law applies here and provides that for claim preclusion to bar a subsequent action there are three requirements: (1) same parties; (2) same claim; and (3) final judgment on the merits. *Andrus v. Nicholson*, 186 P.3d 630, 634 (Idaho 2008); *Ticor Title Co. v. Stanion, II*, 157 P.3d 613, 618 (Idaho 2007).  "The burden of proof for res judicata is on the party asserting the affirmative defense and it must prove all of the essential elements by a preponderance of the evidence." *Kootenai Elec. Coop., Inc. v. Lamar Corp.*, 219 P.3d 440, 444 (Idaho 2009).

Based on the record (including the parties' state court filings that were introduced as exhibits), the Court finds that the same parties are involved here as were before the state court, *i.e.*, Dudley and Strother.  In addition, the issue now before the Court—whether Strother's efforts to intervene and enforce the amended judgment of divorce against Jewett violated Dudley's discharge injunction—was

MEMORANDUM OF DECISION - 4

ultimately raised and heard below. That came about in the following fashion.

Dudley (along with Jewett) filed a "renewed motion" to amend the Amended Judgment. Ex. 203. A few days later, Strother filed a motion and an amended motion to intervene. Exs. 204, 205. These matters were resolved by the state court's August 5, 2016 order. Ex. 201. That order made two rulings. First, the state court found no good cause to amend and denied Dudley's motion. Second, the state court found that its first ruling rendered Strother's motion to intervene moot and thus denied it as well. *Id.* at 4–7.

The August 5 order did not address the question of discharge violation. In it, the state court did note that Strother had received stay relief in order to allow him to pursue Jewett. That court further stated that "All parties agree that Strother is precluded from pursuing Dudley for the attorney fees referenced in paragraph 5 of the *Amended Judgment* because the fees were discharged in bankruptcy." *Id.* at 4.

In opposing Strother's attempts at intervention, Dudley argued prior to the August 5 order that intervention would be "futile" on the grounds that 1) Dudley's obligation to pay attorneys' fees was discharged and 2) the loan obligation of Jewett and his company was a rejected executory contract. Ex. 207, 208. Dudley did not raise a claim that Strother's intervention motions violated her discharge injunction, though Dudley's state court submissions requested—in general terms and without reference to any discharge violation—an award of her attorneys' fees

MEMORANDUM OF DECISION - 5

and costs incurred in responding to the intervention request.

However, following the state court's August ruling, another motion to intervene was filed by Strother in September 2016. Ex. 209. In Dudley's October memorandum in response, Ex. 211, she argued:

> [A]ll of Strother's continued efforts to collect the amount owed him by Dudley constitute continued, ineffectual and illegal attempts to continue to collect a discharged debt. *See*, *e.g.*, 11 U.S.C. § 524(a). Because of Strother's continued attempts to collect a discharged debt, Dudley is entitled to a finding of contempt and an award of attorney fees.

*Id.* at 5–6 (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002)).

Following an October 2016 hearing, the state court ruled from the bench, but an order was not entered until February 10, 2017. Ex. 213 (the "Order").[4] In the Order, the court stated:

> Having considered the written and oral remarks of the parties and counsel, the court denies Strother's motion to intervene for the reasons stated on the record, which are incorporated by reference into this order. In addition, *the court denies respondent Dudley's request that Strother be found in contempt of court for violation of the bankruptcy discharge injunction and denies her request for attorney fees, again for reasons stated on the record, which are incorporated by reference into this order*.

*Id.* at 1–2 (emphasis added).[5] By reason of this history and express ruling, the Court finds that the "same issue" was presented, and the second requirement of

---

[4] The Order indicates it was prepared by Strother. He testified that Dudley's counsel was to prepare an order consistent with the Court's ruling at hearing, but failed to do so, and after several months Strother submitted one.

[5] Neither party provided this Court with a transcript of the state court's oral ruling that was so incorporated.

MEMORANDUM OF DECISION - 6

claim preclusion is met.

The third and remaining issue is whether there was a final judgment on the merits. The state court unambiguously denied Dudley's motion for contempt based on alleged violations of the discharge injunction. However, "[f]or claim preclusion to apply, the prior judgment must be a valid final judgment *rendered on the merits*." *Andrus*, 186 P.3d at 634 (emphasis added).[6] Under Idaho law:

> A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.

*E. Idaho Agric. Credit Ass'n v. Neibaur*, 987 P.2d 314, 320–21 (Idaho 1999) (citing C.J.S. *Judgment* § 728 (1997)).

Here, it is unclear whether the state court judgment was "on the merits." The state court denied Strother's motion to intervene and Dudley's request that Strother be found in contempt for violation of the bankruptcy discharge injunction "for reasons stated on the record." Because Strother has failed to provide the Court a copy of the transcript, the Court cannot determine whether the state court's

---

[6] It is not completely clear whether the state court judgment is yet final. There are Idaho cases that suggest, for purposes of res judicata, that an order becomes final when the time to file an appeal has run. *See Storey Const. Inc. V. Hanks*, 224 P.3d 468, 474 (Idaho 2009) (holding that an order was final because it was appealable as a matter of right and no timely appeal was taken); *See Rodriguez v. Dep't of Corrs.*, 29 P.3d 401, 405 (Idaho 2001) (holding that, for issue preclusion, whether a decision is subject to appeal is a consideration in determining whether a decision is final). Here, the Order was entered on February 10, 2017. Under Idaho Rule of Civil Procedure 83(b)(1)(A), Dudley and Strother have a right to appeal within 42 days (which would be March 24, 2017).

MEMORANDUM OF DECISION - 7

decision was "based on the ultimate fact or state of facts disclosed by the pleadings or evidence." Thus, Strother has not met his burden of proving there was a final judgment on the merits, and the third requirement is unmet.

Strother bore the burden of proof on the claim preclusion argument and has failed to meet that burden. The Court concludes Dudley's claim is not barred by res judicata. However, as explained below, the fact that Dudley's claim is not barred by res judicata does not affect the outcome.

### B. Discharge violation

A violation under § 524(a) is sanctioned through the bankruptcy court's § 105(a) contempt powers. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls*, 276 F.3d at 507. To justify sanctions, the debtor must prove (1) that the offending creditor knew the discharge injunction was applicable and (2) that the creditor intended the actions which violated the injunction. *Bennett*, 298 F.3d at 1069. The Ninth Circuit Bankruptcy Appellate Panel recently explained the movant's burden:

> [T]he Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim. Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one.
> . . .
> In connection with the second prong's intent requirement, we have previously observed that "the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's

MEMORANDUM OF DECISION - 8

> conduct in fact complied with the order at issue.
>
> Accordingly, each prong of the Ninth Circuit's two-part test for a finding of contempt in the context of a discharge violation requires a different analysis, and distinct, clear, and convincing evidence supporting that analysis, before a finding of willfulness can be made.

*Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 288 (9th Cir. BAP 2016) (citations omitted).

Dudley met her burden under the first prong. Strother testified at the hearing that he was aware of the discharge injunction and he knew the injunction applied to his claim against Dudley. And, as noted, the state court in the August 2016 order, Ex. 201, expressly noted the parties' stipulation to that effect.

The remaining question is whether Dudley met her burden under the second prong. Strother clearly intended to file motions to intervene and preserve his conceived rights as a third-party beneficiary under Paragraph 5 of the Amended Judgment.[7] However, filing a motion to intervene does not necessarily violate the discharge injunction. The discharge injunction enjoins creditors from attempting to collect debts "as a personal liability" from the debtor. *Watson v. Shandell (In re Watson)*, 192 B.R. 739, 749 (9th Cir. BAP 1996), *aff'd*, 116 F.3d 488 (9th Cir. 1997); *In re Venegas*, 257 B.R. 41, 44, 01.1 I.B.C.R. 5 (Bankr. D. Idaho 2001). In order to determine whether Strother violated Dudley's discharge injunction, the Court must look to the challenged acts themselves—the three motions to

---

[7] The Court does not opine as to whether Strother had or has an enforceable claim against Jewett—that was solely a matter for the state court's determination, and one apparently rejected by the denial of the intervention motion.

MEMORANDUM OF DECISION - 9

intervene—to determine whether they were attempts to enforce the discharged debt against Dudley or her assets.

Strother argues that under Idaho law he had a right to enforce Paragraph 5 against Jewett because Strother is a third-party beneficiary of the Amended Judgment.[8]  Under Idaho law, if a party can demonstrate that a contract was made expressly for its benefit, it may enforce that contract, prior to rescission, as a third-party beneficiary.  Idaho Code § 29–102.  Dudley argues that Strother's attempted enforcement of Paragraph 5 against Jewett is a backdoor attempt to collect the debt from her because effectuation of Paragraph 5 as written would create an obligation for Dudley to repay Jewett.

In Strother's motions to intervene, he attached proposed complaints in intervention should his motion be granted.  Exs. 205, 209.  In each complaint he noted his prior "demand upon Jewett to pay the $27,726.00."  *Id*. at 3, ¶¶ 8, 11.  He then prayed for "an order denying the joint [Dudley-Jewett] motion for modification of the amended judgment and ordering petitioner Jewett to cause JLJ, Inc., to tender, forthwith, the $27,726.00 concerned by paragraph 5 of the amended judgment together with prejudgment interest at the rate of 12% per annum from December 31, 2015, until the money is paid" plus award Strother costs and fees.

---

[8] At other times, Strother suggested he might have an "attorney's lien on the proceeds of the loan."  *See, e.g.*, Ex. 206.  The Court need not reach this construct either.

MEMORANDUM OF DECISION - 10

*Id.* at 4–5.[9]

Paragraph 5 required Jewett to cause JLJ, Inc. to make a loan to Dudley. While the loan advanced was to be by check jointly payable to Dudley and Strother, Dudley was responsible for securing it and repaying it. Ex. 200 at ¶ 5–6. Though inartful, the proposed complaints in intervention suggest a demand for an order that Jewett (or JLJ, Inc.) tender the funds to Strother directly. Whether Strother could so modify the Jewett-Dudley contractual language, of which he claimed to be third-party beneficiary, is decidedly unclear.

Dudley's approach assumes that any state court ruling granting intervention would necessarily violate her discharge. But intervention could conceivably be allowed without validating Strother's suggested complaint. If Strother were somehow successful at the end of the day in persuading the state court to order Jewett (or JLJ, Inc.) to pay Strother directly, Dudley would not be harmed nor her discharge violated. Recall, when resolving Strother's stay lift request, Dudley expressly stipulated to the entry of an order that:

> allow[ed] Creditor Strother to pursue any claims he may have as third party beneficiary arising out of that Amended Judgment entered December 1, 2015 . . . and in particular, the obligations of Mr. Jewett identified in paragraph 5 on pages 2-3 of that Amended Judgment; the parties having stipulated that, pursuant to 11 U.S.C. § 524(e), the discharge entered in favor of Ms. Dudley "does not affect the liability of any other entity on, or the property of any entity for, such debt,"

---

[9] In his first such filing, he prayed that Jewett tender the money. Ex. 204 at 6. The later prepared complaints, as noted, referred to an order requiring Jewett to cause JLJ, Inc., to tender the money.

MEMORANDUM OF DECISION - 11

> including the liability of Mr. Jewett arising out of paragraph 5 of the Amended Judgment.

Order, Doc. No. 38

Dudley thus invited the process that ensued. True, Strother was limited by the stay relief order, and by Dudley's discharge, to pursue only Jewett. Seeking to intervene, and to assert a complaint to require Jewett to tender $27,726.00 (Jewett having previously rejected Strother's demand that he pay that amount), is what Dudley—and the stipulated order—allowed. The record is muddied by the manner in which relief was requested, which had overtones of seeking to require JLJ, Inc. to make the "loan" or otherwise to visit some liability on Dudley. The record certainly leaves questions open as to how, or even if, Strother could effect relief against Jewett without impacting Dudley.

But, the burden here was on Dudley to establish by "distinct, clear, and convincing evidence" that an act of discharge violation occurred and was willful. *Taggart*, 548 B.R. at 288. Though a violation appears to be suggested since it is hard to credit Strother's contention that Jewett had direct liability to him, the record remains equivocal. After Dudley facilitated the state court process through her stipulation for stay relief, she raised several arguments of futility, executory contract, and other defenses. But only toward the end did she argue discharge violation. Ultimately, for some reason that the parties failed to make clear to this Court, the state court rejected that contention. Though Dudley was able to again assert that contention here, based on the unavailabiltiy of res judicata, she has

MEMORANDUM OF DECISION - 12

failed to meet her burden to sustain it.

**CONCLUSION**

On the record provided and for the foregoing reasons, the Court holds that Dudley's motion for sanctions, Doc. No. 53, is not barred by the doctrine of claim preclusion, but that she has failed to meet her burden of establishing a discharge violation occurred and sanctions against Strother are justified. The motion will therefore be denied.

DATED: March 17, 2017



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13